UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 04-60619-CIV-COHN

ESSEX INSURANCE COMPANY,

        Plaintiff,

vs.

MERCEDES ZOTA, MIGUEL ZOTA,
LIGHTHOUSE INTRACOASTAL, INC.,
JACK FARJI, individually, and
BROWARD EXECUTIVE BUILDERS,
INC.,

        Defendants.
_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Plaintiff Essex Insurance Company's

("Essex") Second Renewed Motion for Summary Final Judgment [DE 187] ("Plaintiff's

Motion for Summary Judgment") and Defendants Lighthouse Intracoastal, Inc.

("Lighthouse"), Jack Farji ("Farji") and Broward Executive Builders, Inc.'s ("Broward

Executive") Amended and Renewed Motion for Summary Judgment [DE 188]

("Defendants Motion for Summary Judgment").[1]  The Court has carefully considered the

Motions for Summary Judgment, the corresponding responses, replies, supplemental

authority, argument heard on February 26, 2009, and is otherwise advised in the

premises.

_____

[1] Mercedes and Miguel Zota adopted Defendants' Motion for Summary
Judgment [DE 191].

1

## I. BACKGROUND

### A. <u>The Underlying Action</u>

In February 2004, Mercedes Zota and Miguel Zota (the "Zota Defendants")

brought an action against Lighthouse, Broward Executive, and Farji in state circuit court

in Broward County, Florida, for personal injuries suffered by Mercedes Zota (the

"Underlying Action").  The Zota Defendants allege that Mercedes Zota ("Zota") was an

architectural wall artist and was painting murals and wall art on property at the "30th

Court" job site, located at 2373 N.E. 30th Court in Lighthouse Point, Florida.  The Zota

Defendants allege that Mercedes Zota was seriously injured when she fell from the

second floor to the ground below. The Zota Defendants contend that the second floor

did not have the appropriate edge protection, railings, chains, or guards. Essex is

providing a defense to Lighthouse and Farji in the Underlying Action.

### B. <u>The Present Action</u>

In this Court, Essex sought a declaration of its rights and obligations with

respect to the Defendants under the insurance policy (policy number 3CM0753) (the

"Policy") that it issued to Lighthouse.  Essex sought a declaration that it was not

required to provide indemnity under the Policy to Lighthouse or Farji for the Zota claim.

In addition, Essex sought a declaration that it was not obligated to defend Lighthouse or

Farji in the Underlying Action, and that Essex be released from any further obligation to

defend or indemnify Lighthouse or any other potential additional insured under the

Policy for the Zota claim.

In their original Motion for Summary Judgment, Defendants contended that they

2

were entitled to summary judgment because Essex failed to deliver the Policy to Lighthouse in compliance with Fla. Stat. § 626.922.  Defendants also asserted that they were entitled to judgment as a matter of law because Mercedes Zota was not an employee of Lighthouse under the terms of the Policy.  They further argued that the Policy terms "contractor, builder or developer" were ambiguous and Lighthouse was not a contractor, builder, or developer.

In its original Renewed Motion for Summary Final Judgment, Plaintiff maintained that the Policy excluded coverage.  Plaintiff argued that Lighthouse was acting as a contractor, builder or developer, and/or the underlying claim was made by an employee of the insured.  Thus, Plaintiff contended that there was no coverage for the claim asserted in the Underlying Action pursuant to the terms of the Policy and it was entitled to judgment as a matter of law.

The Court granted Defendants' Motion for Summary Judgment and denied Plaintiff's Renewed Motion for Summary Final Judgement.  ("District Court Order," DE 119).  The Court found that Essex and its surplus lines agent failed to deliver the Policy and its exclusions to Lighthouse as required by Fla. Stat. §§ 626.922(1) and 627.421.  (Id., at p. 8.) Consequently, Essex was precluded from asserting lack of coverage and the Defendants were entitled to summary judgment as a matter of law.  (Id.)  The Court did not consider the other arguments raised by the parties.  (Id.)  Plaintiff appealed the District Court Order.  (Notice of Appeal, DE 150.)

### C. Zota I

The Eleventh Circuit Court of Appeals in Zota I stated that if the district court erred in holding that Essex was precluded from asserting lack of coverage because of

3

its violation of Florida Statutes §§ 626.922 and 627.421, then the Court must determine

whether Essex was entitled to judgment based on the two coverage exclusions. Essex

Ins. Co. v. Zota, 466 F.3d 981, 986 (11th Cir. 2006). The Eleventh Circuit advised that

since Lighthouse did not obtain the required certificates of insurance covering Zota,

there was no coverage if Lighthouse was a contractor, builder, or developer. Id.  The

Court also pointed out that there was no evidence that Jack Farji directly caused the

injury and therefore there was no coverage if Lighthouse was a builder, contractor or

developer. Id.  However, the parties disputed the role Lighthouse played with respect

to the property where the Zota incident occurred. Id., at 987.

Additionally, the parties disputed whether Zota was an employee of Lighthouse.

In the Underlying Action, Lighthouse stated that it was the statutory employer of Zota for

purposes of worker's compensation laws. Id., at 987.  Defendants countered that the

Associate Vice President of Essex had admitted that Zota was not an employee of

Lighthouse as that term is defined in the Policy.  The Eleventh Circuit advised that, "[i]f

the party's contrary admissions do not determine the factual issue, then it appears that

neither party is entitled to summary judgment on this issue. . . . In fact, Essex concedes

that if Lighthouse is not bound by its admission that it was the 'statutory employer,' then

the issue is a question of fact for trial." Id.

The Eleventh Circuit Court of Appeals did not resolve the issues on appeal.

Rather, Zota I certified a number of questions to the Florida Supreme Court because

they involved unresolved issues of Florida law.  The certified questions include:

> 1.  Whether Fla. Stat. § 626.922 or § 627.421, or both,
> require delivery of evidence of insurance directly to the
> insured, so that delivery to the insured's agent is insufficient.

4

2.   Whether, if the delivery requirement of Fla. Stat. §
626.922 or § 627.421, or both, was not met in this case the
appropriate remedy is to preclude the insurer from asserting
lack of coverage under the terms of the policy.

3.   If either the first or second question is answered in the
negative, whether Lighthouse is a "builder, contractor or
developer" under the terms of the insurance contract, so that
there is no coverage.

4.   If either the first or second question is answered in the
negative, whether Zota is an employee of Lighthouse under
the policy.

5.   If Lighthouse is entitled to coverage, whether Fla. Stat. §
627.428 applies to surplus lines insurers.

Id., at 990.

### D. Zota II

The Florida Supreme Court determined that the answer to question one was

"no." There was "no language present in section 626.922 and 627.421, Florida Statutes

(2003), [that] precludes a surplus insurer or its direct surplus lines agent from delivering

a copy of the coverage document to the insured's independent representative-broker

instead of direct to the insured." Essex Ins. Co. v. Zota, 985 So.2d 1036, 1051 (Fla.

2008). Because the Court answered the first question in the negative, there was no

need to answer the second question. Id., at 1041. The Florida Supreme Court also

declined to answer the third and fourth questions because "our analysis leads us to

conclude that the third and fourth certified questions involve multiple undecided and

underdeveloped factual questions." Id. The fifth question was answered in part by the

negative response to question one. Id. The Florida Supreme Court concluded that "[i]f

Lighthouse and Mr. Farji ultimately prevail in this case against Essex, the federal courts

remain free to impose an award of attorney's fees in their favor." Id., at 1051.

5

### E. Zota III

The Eleventh Circuit Court of Appeals then issued Zota III. (Zota III, DE 176).

Zota III vacated the District Court Order and remanded the case.  The Eleventh Circuit

stated that the remaining issues that they had previously certified could not be decided

from the summary judgment record without additional findings by the district court.

### II. ANALYSIS

In the present Motion for Summary Judgment, Defendants argue that (1) Zota

was not an employee of Lighthouse; (2) Plaintiff did not follow the requirements of Fla.

Stat. §627.410 and as a result, the endorsement exclusions are void; (3) the terms

contractor, builder and developer are not defined in the policy and are ambiguous, but if

not ambiguous, do not apply because Lighthouse was the owner of the property.

Plaintiff also moves for summary judgment arguing that there is no coverage under the

Policy because Lighthouse was a builder, contractor and/or developer.

The Court may grant summary judgment "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court

of the basis for its motion, and identifying those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986).  To discharge this burden, the movant must demonstrate that

there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production

shifts and the nonmoving party "must do more than simply show that there is some

6

metaphysical doubt as to the material facts." <u>Matsushita Electronic Industrial Co. v.</u>

<u>Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). According to the plain language of Fed.

R. Civ. P. 56(e), "an opposing party may not rely merely on allegations or denials in its

own pleading; rather, its response must--by affidavits or as otherwise provided in this

rule--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e);

<u>Matsushita</u>, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to

conduct discovery, it must come forward with affirmative evidence to support its claim.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must be a

sufficient showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>,

911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving

party "is merely colorable, or is not significantly probative, then summary judgment may

be granted." <u>Anderson</u>, 477 U.S. at 249-50.

### A. <u>The Requirements of Florida Statute § 627.410</u>

Florida Statute § 627.410(1) provides that:

> No basic insurance policy or annuity contract form, or
> application form where written application is required and is to
> be made a part of the policy or contract, or group certificates
> issued under a master contract delivered in this state, or
> printed rider or endorsement form or form of renewal
> certificate, shall be delivered or issued for delivery in this state,
> unless the form has been filed with the office by or in behalf of
> the insurer which proposes to use such form and has been
> approved by the office. This provision does not apply to surety
> bonds or to policies, riders, endorsements, or forms of unique
> character which are designed for and used with relation to
> insurance upon a particular subject (other than as to health
> insurance), or which relate to the manner of distribution of

benefits or to the reservation of rights and benefits under life
or health insurance policies and are used at the request of the
individual policyholder, contract holder, or certificate holder. As
to group insurance policies effectuated and delivered outside
this state but covering persons resident in this state, the group
certificates to be delivered or issued for delivery in this state
shall be filed with the office for information purposes only.

Plaintiff argues that § 627.410(1) does not apply to surplus lines insurers

because it is trumped by and conflicts with § 626.923. Florida Statute  § 626.923 states

that:

A surplus lines agent shall, within 30 days after the date of a
request by the department or the Florida Surplus Lines Service
Office, furnish an exact copy of any and all requested policies,
including applications, certificates, cover notes, or other forms
of confirmation of insurance coverage or any substitutions
thereof or endorsements thereto. The department or the
Florida Surplus Lines Service Office may also request and the
agent shall furnish, within 30 days after the date of the request,
the agent's memorandum as to the substance of any change
represented by a substitute certificate, cover note, other form
of confirmation of insurance coverage, or endorsement as
compared with the coverage as originally placed or issued.

Plaintiff contends that "[t]o hold that surplus-lines insurers must always file their policy

forms and have them approved by the OIR prior to delivering or issuing any policy

would have the effect of rendering § 626.923 and other provisions in Chapter 626

meaningless." (Plaintiff Response, DE 202, p. 4.)   Plaintiff's argument is supported by

the affidavits of Steven H. Parton and Gary Pullen.

Gary Pullen is the Executive Director of the Florida Surplus Lines Service Office.

Mr. Pullen states that his office has never required surplus lines insurers to comply with

§627.410 nor does the Florida Office of Insurance Regulation ("OIR") intend to require

compliance with this statute even after the opinion in <u>Essex Ins. Co. v. Zota</u>, 985 So.2d

1036 (Fla. 2008).  (Pullen Affidavit, DE 203, p. 5 - 6.)  Steven Parton is presently

General Counsel for the Florida Office of Insurance Regulation.  He maintains that §

627.410 applies to authorized insurers while §§ 626.913 - 626.937 apply to surplus

lines insurers.  (Parton Affidavit, DE 203, p. 10.)  Mr. Parton states that § 626.916(1)(c)[2]

requires surplus lines insurers to file a form with the Office for review.  The only other

filing requirement is in House Bill 601 introduced in the 2008 Regular Session. (Id.)

     The argument that the legislature did not intend for  § 627.410 to apply to surplus

lines insurance was presented to the Eleventh Circuit in CNL Hotels & Resorts, Inc. v.

Twin City Fire Ins. Co., 291 Fed. Appx. 220 (11th Cir. Aug. 18, 2008). The CNL Court

found that § 627.410 applied to surplus lines insurance and remanded the case to

determine whether an endorsement was void because it was not filed with the OIR. Id.

at 225.  The CNL Court was presented with similar arguments that Plaintiff raises here

and declined reconsideration of its finding.  See Defendants' Reply, DE 221, and

exhibits attached thereto.   The CNL Court premised its finding on the Zota II decision

---

[2] Florida Statute § 626.916(1)(c) states that:
The policy or contract form under which the insurance is exported shall
not be more favorable to the insured as to the coverage or rate than under
similar contracts on file and in actual current use in this state by the
majority of authorized insurers actually writing similar coverages on similar
risks; except that a coverage may be exported under a unique form of
policy designed for use with respect to a particular subject of insurance if
a copy of such form is filed with the office by the surplus lines agent
desiring to use the same and is subject to the disapproval of the office
within 10 days of filing such form exclusive of Saturdays, Sundays, and
legal holidays if it finds that the use of such special form is not reasonably
necessary for the principal purposes of the coverage or that its use would
be contrary to the purposes of this Surplus Lines Law with respect to the
reasonable protection of authorized insurers from unwarranted
competition by unauthorized insurers.

where the Florida Supreme Court stated that:

> this Court has previously held that-under a full statutory analysis-section
> 627.021(2)[3] applies exclusively to part I of chapter 627. See Nat'l
> Corporacion Venezolana, S.A. v. M/V Manaure V, 511 So.2d 968, 970-71
> (Fla.1987); §§ 627.011-627.381, Fla. Stat. (2003) (part I of chapter 627).
> Furthermore, the relevant legislative materials, as well as the structure
> and organization of chapter 627, demonstrate that the exclusionary
> provisions of section 627.021(2) only relate to "the ratings laws of part I,
> chapter 627, F.S.," as this Court has previously held. . .

Zota II, 985 So.2d at 1042.  Therefore, part II of Chapter 627, which includes §627.410,

applies to surplus lines insurers.

Plaintiff argues that even if § 627.410 applies, then § 626.923[4] would create an

---

[3] Florida Statute § 627.021 provides that:

(1) This part of this chapter applies only to property, casualty, and surety
insurances on subjects of insurance resident, located, or to be performed
in this state.
(2) This chapter does not apply to:
(a) Reinsurance, except joint reinsurance as provided in s. 627.311.
(b) Insurance against loss of or damage to aircraft, their hulls,
accessories, or equipment, or against liability, other than workers'
compensation and employer's liability, arising out of the ownership,
maintenance, or use of aircraft.
(c) Insurance of vessels or craft, their cargoes, marine builders' risks,
marine protection and indemnity, or other risks commonly insured under
marine insurance policies.
(d) Commercial inland marine insurance.
(e) Surplus lines insurance placed under the provisions of ss.
626.913-626.937.
(3) For the purposes of this chapter, all motor vehicle insurance shall be
deemed to be casualty insurance only.
(4) This part does not apply to health insurance.

[4] Florida Statute § 626.923 states that :
A surplus lines agent shall, within 30 days after the date of a request by
the department or the Florida Surplus Lines Service Office, furnish an
exact copy of any and all requested policies, including applications,
certificates, cover notes, or other forms of confirmation of insurance
coverage or any substitutions thereof or endorsements thereto. The

10

exception to the extent that surplus line insurers are required to file policy forms and have them approved only upon request by the OIR. (Plaintiff's Response, DE 202, p. 5.)

Defendants argue that there is no inconsistency between §§ 626.923 and 627.410 because § 627.410 discusses approval of policy forms before an insurance policy is issued and § 626.923 deals with filing a copy of a policy after issuance. (Defendants' Reply, DE 221, p. 5-6.) Defendants assert that the requirements of §626.923 are in addition to the requirements of § 627.410. (Id. at p. 6.) Because the Eleventh Circuit and the Florida Supreme Court determined that  § 627.410 applies to surplus lines insurance, the Court finds that the most plausible reading of the statutes is as Defendants explain, the statutes both apply in different circumstances.

Plaintiff also submitted a copy of HB 853 that was filed in the Florida House of Representatives on February 12, 2009 and SB 1894 that was filed in the Florida Senate on February 19, 2009. (Notices of Supplemental Authority, DEs 229, 233.)  The original draft of HB 853 would amend Fla. Stat. § 626.913 to state that:

> Section 1. Subsection (4) is added to section 626.913, Florida Statutes, to read: 626.913 Surplus Lines Law; short title; purposes.--
>     (4) Except as may be specifically stated to apply to surplus lines insurers, the provisions of chapter 627 do not apply to surplus lines insurance authorized under ss. 626.913-626.937, the Surplus Lines Law.

---

department or the Florida Surplus Lines Service Office may also request and the agent shall furnish, within 30 days after the date of the request, the agent's memorandum as to the substance of any change represented by a substitute certificate, cover note, other form of confirmation of insurance coverage, or endorsement as compared with the coverage as originally placed or issued.

11

> Section 2. If any provision of this act or the application thereof to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared severable.
>
> Section 3. This act shall take effect upon becoming a law and shall operate retroactively to October 1, 1988.

These bills certainly evidence a current desire to remove surplus lines insurers from the obligations of chapter 627. (Response, DE 202, p. 13 - 17.) However, this legislation has not yet passed and has no impact on this action. The present state of the law as analyzed by the Eleventh Circuit and the Florida Supreme Court is that § 627.410 applies to surplus lines insurers.

Having determined that Fla. Stat. § 627.410 applies to surplus lines insurers, the Court must now determine what remedy or penalty, if any, results from Plaintiff's admitted failure to abide by the statute's filing requirements. (Defendants' Motion for Summary Judgment, Exhibit K, DE 188-3, p. 4.) The CNL Court, citing Zota II, found that § 627.410(1) applies to surplus lines insurance and remanded to the district court to determine whether the endorsement was void because it was not filed with the OIR. CNL Hotels & Resorts, 291 Fed. Appx. at 225.

The CNL Court also cited Am. Mut. Fire Ins. Co. v. Illingworth, 213 So.2d 747, 749 (Fla. Dist. Ct. App. 1968) for the proposition that failure to file a form with the OIR renders the form void. CNL Hotels & Resorts, Inc, 291 Fed. Appx. at 225. The Illingworth Court found that "[b]ecause the endorsement form was not approved by the insurance commissioner then any endorsement written on the unapproved form must be rendered void. If the form is not approved then the endorsement written on it in

12

favor of the appellant must be in effect null and void." Illingworth, 213 So.2d at 750.

This Court is presented with a similar question as that presented on remand, whether

failure to follow the filing requirements in the statute renders the endorsement void?

Plaintiff argues that the endorsement is not void because an insurer's

noncompliance cannot be used by an insured to create or resurrect coverage that never

existed under the policy. (Plaintiff's Response, DE 202, p. 6.)  The principal case cited

by Plaintiff is AIU Ins. Co. v. Block Marina Investment, Inc., 544 So.2d 998 (Fla. 1989).

In Block Marina, the Florida Supreme Court addressed the issue of "whether

petitioner AIU Insurance Company (AIU) is prohibited from denying coverage in

connection with a loss, coverage which is excluded under a comprehensive liability

policy, due to its noncompliance with the notice requirements of section 627.426(2),

Florida Statutes (1985)." Block Marina, 544 So.2d at 998.  The trial court granted Block

Marina and Norfolk Marine summary judgment prohibiting AIU from denying coverage

because AIU had failed to notify the insured as required by §627.426(2)(b). Id. at 999.

The Florida Supreme Court disagreed and stated that the legislature did not intend "to

give an insured coverage which is expressly excluded from the policy or to resurrect

coverage under a policy or an endorsement which is no longer in effect, simply because

an insurer fails to comply with the terms of the aforementioned statute." Id.  The Court

found that the statute, in effect,  worked as an estoppel and "while the doctrine of

estoppel may be used to prevent a forfeiture of insurance coverage, the doctrine may

not be used to create or extend coverage." Id. at 1000.  The Court also found that

construing the term "cover defense" which was in the statute:

> to include a disclaimer of liability based on an express

13

coverage exclusion has the effect of rewriting an insurance policy when section 627.426(2) is not complied with, thus placing upon the insurer a financial burden which it specifically declined to accept.   Such a construction presents grave constitutional questions, the impairment of contracts and the taking of property without due process of law.   Therefore, we hold that the term 'coverage defense' as used in section 627.426(2), means a defense to coverage that otherwise exists.   Under this construction, for example, if the insurer fails to comply with the requirements of the statute, it may not declare a forfeiture of coverage which otherwise exists based on a breach of a condition of the policy.   However, its failure to comply with the requirements of the statute will not bar an insurer from disclaiming liability where a policy or endorsement has expired or where the coverage sought is expressly excluded or otherwise unavailable under the policy or under existing law.

Id.  Plaintiff draws parallels to the present situation by arguing that its failure to comply with statutory filing requirements should not be used to void the exclusions and broaden coverage for claims expressly excluded under the original Policy. (Response, DE 202, p. 6.)  Defendants counter that they never asserted estoppel and have not sought coverage based on estoppel. (Reply, DE 221, p. 10.)   Defendants also contend that the <u>Block Marina</u> decision is limited to § 627.426 and cite <u>Doe v. Allstate Ins. Co.</u>, 653 So.2d 371 (Fla. 1995) in support.

 <u>Doe</u>, in discussing the <u>Block Marina</u> decision, stated that the decision "simply recognizes that section 627.426 does not create or extend nonexistent coverage." <u>Doe</u>, 653 So.2d at 374.  Despite the <u>Doe</u> decision's limiting language, the underlying premise of <u>Block Marina</u> is that a technical statutory requirement should not be utilized to create coverage where coverage would not normally be found pursuant to the policy.

 In <u>Zota I</u>, the Eleventh Circuit, relying on <u>Block Marina</u>, concluded that the Florida Supreme Court disfavored reforming an insurance contract to provide coverage that was

14

not otherwise provided under the contract:

> The opinion notes that the general rule that estoppel may not be used to
> create coverage is a "long-standing rule" not altered by the statute.  It also
> states that interpreting the statute to preclude insurers from denying
> coverage based on an express coverage exclusion in the policy would have
> the effect of re-writing the policy and this would raise "grave constitutional
> questions [regarding] the impairment of contracts and the taking of property
> without due process of law."  The defendants attempt to confine the scope
> of the AIU decision to interpretation of the particular Florida statute at issue
> in that case. A strong argument can be made, however, that the AIU decision
> evidences the Florida Supreme Court's reluctance to do what the defendants
> seek here, which would have the effect of altering the terms of the insurance
> contract to create coverage that is not provided for under the policy.

Zota I, 466 F.3d at 985.  The present situation is quite similar to that addressed by Zota

I.  Defendants are asking the Court to void only the exclusions and find coverage under

the remaining Policy.  This would have the effect of altering the terms of the insurance

contract because the insurance contract bargained for by the parties included the

exclusions.  See e.g. F.D.I.C. v. American Cas. Co. of Reading, Pa., 975 F.2d 677, 683

(10th Cir. 1992) ("[v]oidance of exclusion to an insurance policy is a severe penalty

which alters the very terms of the deal between the parties. It requires the insurer to

provide coverage for uncontracted risk, coverage for which the insured has not paid.")

Voiding only the exclusions would transform the original Policy that included the

bargained for exclusions.  In light of the language in Block Marina and Zota I, this Court

must refrain from any alteration of the terms of the insurance contract.  Consequently,

the Court finds itself in the position of finding that voiding is not the appropriate remedy

for failing to abide by the filing requirements, but having no guidance in § 627.410 for

what an appropriate remedy or penalty should be.

     Plaintiff argues that rescission is the only available remedy for its failure to

comply with §627.410. (Response, DE 202, p. 6.)  Rescinding the policy would require a refund of premiums and no coverage for this accident. (Id. at p. 7.) Plaintiff notes that operation of § 627.410 would result in the voiding of the entire policy because Essex failed to file the policy with the OIR. (Id. at p. 8.) Defendants respond that rescission is a harsh remedy utilized only when there has been fraud, accident or mistake.

Plaintiff submits case law which holds that the failure to fulfill a condition precedent results in there being no contract. See Mitchell v. Dimare, 936 So.2d 1178 (Fla. 5th DCA 2006); Southern Internet Systems, Inc. ex rel. Menotte v. Pritula, 856 So.2d 1125 (Fla. 4th DCA 2003).  While this is a correct statement of the law, rescission is ordinarily granted only for fraud, accident or mistake. See Kaufman v. City Place South Tower, LLC, 2008 WL 4722106, * 6 (S.D. Fla. Oct. 21, 2008). There is no evidence of fraud, accident or mistake in the record.  As a result, rescission of the entire Policy is not a proper remedy.

Another possible solution identified by Plaintiff is  that pursuant to Fla. Stat. § 627.418, noncompliance with Fla. Stat. § 627.410 should not invalidate an otherwise valid policy provision.  This statute provides that:

> Any insurance policy, rider, or endorsement otherwise valid which contains any condition or provision not in compliance with the requirements of this code shall not be thereby rendered invalid, except as provided in s. 627.415, but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this code. In the event an insurer issues or delivers any policy for an amount which exceeds any limitations otherwise provided in this code, such insurer shall be liable to the insured or his or her beneficiary for the full amount stated in the policy in addition to any other penalties that may be imposed under this code.

16

Fla. Stat. § 627.418. Defendants posit that this statute is designed to prevent situations like the present, where an insurance company does not follow the insurance code, finds out after a claim is made that its provisions violate the law, and then attempts to void the entire policy and not pay the claim. (Reply, DE 221, p. 13.)

Defendants are correct in stating that § 627.418 "is designed to guarantee that the courts not bar coverage to policy holders because their contracts contain a condition or provision which violates the insurance code." Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla. 1979). However, as Judge Middlebrooks explained, even though § 627.418(1) may have intended to benefit policy holders and not insurance companies, the statute suggests that, in the absence of an express penalty in the statute, courts should assume that a policy provision is valid despite noncompliance with the Insurance Code. Chalfonte Condominium Apartment Ass'n, Inc. v. QBE Ins. Corp., 526 F. Supp. 2d 1251, 1257 (S.D. Fla. 2007).[5] The Court is faced with the same dilemma as Judge Middlebrooks. In QBE Judge Middlebrooks determined that QBE violated Fla. Stat. § 627.701(4) by not putting the language in the proper font size and by substituting the word 'windstorm' for 'hurricane loss.' Id. at 1256. The statute that was violated had no express penalty attached and the Court declined to create one. Id. Notably, Judge Middlebrooks did not void the deductible

---

[5] Judge Middlebrooks' analysis in Chalfonte Condominium Apartment Ass'n, Inc. v. QBE Ins. Corp., 526 F. Supp. 2d 1251, 1257 (S.D. Fla. 2007) was appealed to the Eleventh Circuit. The Eleventh Circuit in turn certified questions to the Florida Supreme Court including a question concerning the appropriate remedy for failing to comply with Florida statutory requirements for disclosure of hurricane deductibles. Chalfonte Condominium Apartment Ass'n, Inc. v. QBE Ins. Corp., 2009 WL 580775, (11th Cir. Mar 09, 2009). The Florida Supreme Court has yet to respond.

provision because construing the Insurance Code as a whole, an appropriate penalty could be some kind of fine from the Department of Insurance. Id. at 1257. Here, the Court has determined that Fla. Stat. § 627.410 applies and was violated. Yet, there is no express penalty for violation of the statute. The only case addressing a penalty for violation of Fla. Stat. § 627.410 is Am. Mut. Fire Ins. Co. v. Illingworth, 213 So.2d 747, 749 (Fla. 2nd DCA, 1968). Illingworth found that failure to file a form with the OIR renders the form void. However, this Court concludes that voiding only the endorsement and allowing the Policy to remain in force without the exclusions would raise grave constitutional concerns. Therefore, like Judge Middlebrooks in QBE, this Court concludes that pursuant to Fla. Stat. § 627.418(1), the endorsement provision is valid despite noncompliance with the Insurance Code.

## B. The Builder, Contractor or Developer Exclusion

In Florida "an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer." Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828, 830 (Fla.1997). If there is an ambiguity in an insurance policy, that ambiguity should be construed against the insurer. Purrelli v. State Farm Fire & Cas. Co., 698 So.2d 618, 620 (Fla. 2d DCA 1997). An insurance policy is ambiguous "if it is susceptible to two or more reasonable interpretations that can fairly be made." Cont'l Cas. Co. v. Wendt, 205 F.3d 1258, 1261 (11th Cir.2000). Florida courts have made clear that it is only when there is a genuine inconsistency or ambiguity in the policy that this rule of construction is employed. "Thus, it is only where courts first determine that policy language is ambiguous that contractual language is to be construed in favor of the insured. When

18

an insurance contract is not ambiguous, it must be given effect as written." Siegle v. Progressive Consumers Ins. Co., 819 So. 2d 732, 735 (Fla. 2002). This rule of construction "'does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.'" Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003)(citing Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 942 (Fla. 1979).

In Florida, insurance policies must be read as a whole. Fla. Stat. § 627.419 (1); see also Matthews v. Ranger Ins. Co., 281 So. 2d 345, 348 (Fla. 1973). Just because an operative term is not defined, it does not necessarily mean that the term is ambiguous. Swire Pac. Holdings, 845 So. 2d at 166. "[T]erms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties – not a strained, forced or unrealistic construction." Siegle, 819 So. 2d at 736 (quoting Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co., 260 So. 2d 249, 253 (Fla. 4th DCA 1972)). The court may look to parol evidence in interpreting an insurance contract only if there is an ambiguity. Fireman's Fund Ins. Co. v. Tropical Shipping and Const. Co., 254 F.3d 987, 1003 (11th Cir.2001).

The Combination General Endorsement (M/E-001) provides:

> If you are a contractor, builder or developer, there is no coverage under this policy for:
>
> 1. "Bodily injury," "personal injury," or "property damage" caused by acts of Independent Contractors/ subcontractors contracted by you or on your behalf unless you obtain Certificates of Insurance from them providing evidence of at least like coverage and limits of liability as provided by this policy and naming you

as an additional insured.

2.  "Bodily injury," "personal injury," or "property damage"
sustained by any independent contractor/
sub-contractor, or any employee, leased worker,
temporary or volunteer help of same, unless a Named
Insured or employee of a Named Insured is on site, at
the time of the injury or damage, and the Named
Insured's actions or inactions are the direct cause of
the injury or damage, or the injury or damage is
directly caused by an employee of the Named
Insured.

(Policy, DE 74, p. 34).

The parties dispute the role Lighthouse played with respect to the property where

Zota was injured.  Essex argues that even though the terms "contractor", "builder" and

"developer" are not defined in the Policy, they are not ambiguous, and given their usual

and customary meaning, Lighthouse fits into all of these definitions.  (Plaintiff's Motion

for Summary Judgment, DE 187, p. 7 - 13.)  Defendants counter that at the time of the

Policy, Lighthouse was the owner of the land, not a contractor, builder, or developer,

and the exclusions do not apply.  (Defendants' Motion for Summary Judgment, DE 188,

p. 24 - 25.)  Lighthouse also maintains that the terms contractor, builder and developer

are susceptible to two or more reasonable interpretations and consequently, the terms

are ambiguous. (Id. at p. 16 - 24.)

## 1. Builder

Because the Policy provides no definition, the parties propose the following

definitions for builder:

1.  A person in the business of constructing buildings.  Webster's New World
Dictionary, 183 (3d ed. 1994); (Plaintiff's Motion for Summary Judgment, DE
187, p. 8.)

20

2.      A person who supervises and usually has a financial interest in building operations and the arts and trades involved in their progress - compare CONTRACTOR. <u>Webster's Third New International Dictionary, Unabridged</u>. Merriam-Webster, 2002; (Defendants' Motion for Summary Judgment, DE 188, p. 21.)

Lighthouse alleges that it did not supervise construction and therefore, is not a builder. (Defendants' Response, DE 198, p. 6.) Lighthouse also argues that it was not a "person" performing the work and building the home, rather, Jack Farji and/or Broward Executive performed these duties. (<u>Id.</u>) Additionally, Lighthouse takes issue with Plaintiff's characterization that it was <u>acting as</u> a contractor, builder or developer or it was <u>acting with every indicia</u> that it was a contractor, builder or developer because the policy exclusion only applies "if you <u>are</u> a contractor, builder or developer. . ." (Defendants' Reply, DE 221, p. 16 (emphasis added).)

In construing terms appearing in insurance policies, the Court adopts the plain "meaning of the words contained in legal and non-legal dictionaries." <u>Wendt</u>, 205 F.3d at 1263. Both of the definitions provided are reasonable and are from non-legal dictionaries. The most comprehensive definition is proposed by the Defendants and under either  Lighthouse has identified itself as the builder.   In correspondence on May 9, 2003, from Nissin Farji to Brandon & Co., Lighthouse is identified as the builder of the property at 30th Court.  (Plaintiff's Motion for Summary Judgment, DE 85, p. 178). Defendants argue this was simply a scrivener's error because six days later the City of Lighthouse Point issued the permit for the construction of the home that listed Lighthouse as the owner and Broward as the contractor. (Defendants' Response, DE 198, p. 13; Permit, DE 101, p. 19.) However, there was also an e-mail dated May 8, 2003, discussing Mr. Farji's request for quotes for a "new builders risk" for the 30th

Court property and Lighthouse is named as the builder.  (Plaintiff's Motion for Summary Judgment, DE 85, p. 222.)

Because there is record evidence indicating that Lighthouse was a builder and evidence that Lighthouse was the owner, there are disputed issues of material fact and summary judgment is not appropriate on this issue.

### 2. Contractor

The parties propose the following definitions for contractor:

1.  A person who contracts to supply certain materials or do certain work for a stipulated sum, especially one who does so in any of the building trades. Webster's New World Dictionary, 302 (3d ed. 1994); (Plaintiff's Motion for Summary Judgment, DE 187, p. 10.)

2.  One that contracts to erect buildings.  Merriam-Webster New Collegiate Dictionary (1973); (Plaintiff's Motion for Summary Judgment, DE 187, p. 10.)

3.  "'Contractor' means the person who is qualified for, and shall only be responsible for, the project contracted for and means, except as exempted in this part, the person who, for compensation, undertakes to, submits a bid to, or does himself or herself or by others construct, repair, alter, remodel, add to, demolish, subtract from, or improve any building or structure, including related improvements to real estate, for others or for resale to others; and whose job scope is substantially similar to the job scope described in one of the subsequent paragraphs of this subsection. . . Contractors are subdivided into two divisions, Division I, consisting of those contractors defined in paragraphs (a)-(c), and Division II, consisting of those contractors defined in paragraphs (d)-(q). . ." Fla. Stat. § 489.105(3); (Defendants' Motion for Summary Judgment, DE 188, p. 17.)

4.  "'General contractor' means a contractor whose services are unlimited as to the type of work which he or she may do, who may contract for any activity requiring licensure under this part, and who may perform any work requiring licensure under this part, except as otherwise expressly provided in s. 489.113." Fla. Stat. § 489.105(3)(a); (Defendants' Motion for Summary Judgment, DE 188, p. 17.)

5.  "'Building contractor' means a contractor whose services are limited to construction of commercial buildings and single-dwelling or multiple-dwelling residential buildings, which commercial or residential buildings do not exceed three stories in height, and accessory use structures in connection therewith or a contractor whose services are limited to remodeling, repair, or improvement of

any size building if the services do not affect the structural members of the building." Fla. Stat. § 489.105(3)(b); (Defendants' Motion for Summary Judgment, DE 188, p. 18.)

6.  One who contracts on predetermined terms to provide labor and materials and to be responsible for the performance of a construction job in accordance with established specifications or plans - called also building contractor.  Webster's Third New International Dictionary, Unabridged.  Merriam-Webster, 2002; (Defendants' Motion for Summary Judgment, DE 188, p. 19.)

Plaintiff points to other insurance contracts where Lighthouse identified itself as a contractor. (Plaintiff's Motion for Summary Judgment, DE 187, p. 14-18.)  But in this policy, Lighthouse describes itself as an "owner of land where dwellings are being built." (Policy, DE 74, p. 26). Plaintiff also argues that Lighthouse was a contractor because it contracted with and paid all subcontractors on the job, contracted with the architectural firm who prepared the plans and obtained the construction loan.  (Plaintiff's Motion for Summary Judgment, DE 187, p. 10.) Plaintiff argues that although the Defendants assert that Mr. Farji qualified Broward Executive as its building contractor, there was no written agreement and Lighthouse did not pay Broward Executive as a contractor, builder or developer.  (Id. at p. 10-11.)

Defendants argue that Farji was the licensed building contractor and he qualified Broward Executive.  (Defendants' Motion for Summary Judgment, DE 188, p. 18.) Defendants state that it was Broward Executive that pulled all of the permits for the construction of the home.  (Id.)  Defendants, citing the Webster's Third New International Dictionary definition of contractor, maintain that Lighthouse was not a contractor because it was not responsible for the performance of the construction of the home in accordance with established specifications.  (Id. at p. 19.) Additionally, Defendants argue that even using Plaintiff's definition of a contractor: a person who

contracts to supply certain materials or do certain work for a stipulated sum, Lighthouse

does not qualify because it was the subcontractors that were supplying certain

materials and doing certain work for a stipulated sum. (Id.)

Defendants argue that even if one who contracts was the definition it would not

include Lighthouse because contracting:

> shall not extend to an individual, partnership, corporation, trust, or other legal
> entity that offers to sell or sells completed residences on property on which
> the individual or business entity has any legal or equitable interest, or to the
> individual or business entity that offers to sell or sells manufactured or
> factory-built buildings that will be completed on site on property on which
> either party to a contract has any legal or equitable interest, if the services
> of a qualified contractor certified or registered pursuant to the requirements
> of this chapter have been or will be retained for the purpose of constructing
> or completing such residences.

Fla. Stat. §489.105(6); (Defendants' Motion for Summary Judgment, DE 188, p. 20.)

Defendants maintain that Lighthouse falls within the exception because it is a

corporation that offered to sell a completed residence on property which it owned and it

retained the services of a qualified contractor who constructed the residence.

(Defendants' Motion for Summary Judgment, DE 188, p. 20.)

Policy language is considered ambiguous if it is susceptible to more than one

reasonable interpretation. Wendt, 205 F. 3d at 1261. Merely because the contract

requires interpretation or fails to provide a definition for a term involving coverage does

not mean that there is ambiguity. Id. at 1262. The definitions of contractor proposed

by the parties are very similar and vary only slightly in their scope. The Court finds that

the term contractor is not ambiguous. In construing terms appearing in insurance

policies, the Court adopts the plain "meaning of the words contained in legal and non-

legal dictionaries." Wendt, 205 F.3d at 1263.  Looking to the regular dictionary definition of the term, the Court finds that a contractor is "One who contracts on predetermined terms to provide labor and materials and to be responsible for the performance of a construction job in accordance with established specifications or plans - called also building contractor." Webster's Third New International Dictionary, Unabridged. Merriam-Webster, 2002.  Having established the definition of the term, there is still a factual dispute about whether Lighthouse was a contractor. See e.g. Policy, DE 74, p. 26 (Lighthouse is the "owner of land where dwellings are being built"); Deposition of Todd Brandon, DE 76, p. 114-117; Inland Marine Declarations, DE 85, p. 181 (Lighthouse is the Residential Contractor); Building Permit, DE 101, p. 19 (Broward Executive is the Contractor); Statement of Disputed & Undisputed Facts, DE 192, p. 2. (undisputed that Lighthouse did not pay Broward Executive as a contractor while the house was being built).  Because there are disputed issues of material fact regarding whether Lighthouse was a contractor, the Court cannot resolved this issue at the summary judgment stage.

### 3. Developer

Like the terms builder and contractor, developer is not defined in the Policy.  The parties provide the following definitions for developer:

1. A person or thing that develops, specifically a person who develops real estate on a speculative basis. Webster's New World Dictionary, 376 (3d ed. 1994); (Plaintiff's Motion for Summary Judgment, DE 187, p. 11.)

2. A person who develops real estate; often one that improves and subdivides land and builds and sells residential structures thereon. Webster's Third New International Dictionary, Unabridged. Merriam-Webster, 2002. (Plaintiff's Motion for Summary Judgment, DE 187, p. 11); (Defendants' Motion for Summary Judgment, DE 188, p. 23.)

25

3.   "'Developer' means either a building contractor who offers new residential
dwelling units for sale or any person who offers a new one-family or two-family
residential dwelling unit for sale, except for a person who sells or constructs less
than 10 units per year statewide." Fla. Stat. § 501.1375 (1)(b); (Defendants'
Motion for Summary Judgment, DE 188, p. 22.)

Plaintiff asserts that Lighthouse was a developer because it bought the 30th

Court residence, demolished the existing structure and erected a "spec" home which it

then sold for profit. (Plaintiff's Motion for Summary Judgment, DE 187, p. 11.) Plaintiff

also points to the deposition testimony of Jack Farji where he agreed that Lighthouse

put a spec home on the property, had developed the property and was paying for the

construction of the spec home that was eventually sold. (Id. at p. 12 - 13.) Defendants

agree that the Webster's Third New International Dictionary definition of a developer is

reasonable but state that Lighthouse never subdivided land and does not meet this

definition. (Defendants' Motion for Summary Judgment, DE 188, p. 23.) Defendants

also propose that Lighthouse is not a developer under the statutory definition because it

constructed less than 10 units per year statewide. (Id.)

Here there is an ambiguity.  In construing terms appearing in insurance policies,

the Court adopts the plain "meaning of the words contained in legal and non-legal

dictionaries." Wendt, 205 F.3d at 1263.  Looking to the two proposed dictionary

definitions, the testimony of Mr. Farji would qualify Lighthouse as a developer under the

first definition.  But it is also alleged that Lighthouse did not subdivide land and

therefore Lighthouse would not be a developer under the second definition.  Further,

under the third definition it is alleged Lighthouse is not a developer because it did not

construct more than 10 units.  Consequently, the term developer as used in the Policy

is ambiguous as it is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage. <u>Wendt</u>, 205 F. 3d at 1261. The exclusion should therefore be construed against the insurer. Accordingly, the Court finds that Lighthouse was not a developer.

### 4. Exceptions to Exclusion

Even if Lighthouse is a builder, contractor, or developer, the Policy provides exceptions to the exclusions. For the sake of completeness, the Court will analyze these exceptions. The Eleventh Circuit addressed this issue and stated that:

> Lighthouse did not obtain the required certificates of insurance covering Zota, so there is no coverage under the first paragraph if Lighthouse is a "contractor, builder or developer," and there is none under the second paragraph unless an employee of Lighthouse was on site at the time of Zota's accident and directly caused her injuries. Although Lighthouse asserts that Jack Farji was on site at the time of the Zota incident, it concedes that there is no evidence that Farji's actions were the direct cause of Zota's injury. Therefore, there would be no coverage if Lighthouse is a "contractor, builder or developer."

<u>Zota I</u>, 466 F.3d at 986. Aside from the new Fifth Amended Complaint in the Underlying Action, Defendants have not produced additional evidence since the 11th Circuit's finding.

During the Court's hearing on the Motions for Summary Judgment, Defendants argued that the second exception applied. (Transcript, DE 236, p. 69.) The second exception states that the builder, developer, contractor exclusion applies:

> unless a Named Insured or employee of a Named Insured is on site, at the time of the injury or damage, and the Named Insured's actions or inactions are the direct cause of the injury or damage, or the injury or damage is directly caused by an employee of the Named Insured.

(Policy, DE 74, p. 34.) Defendants assert that it is a disputed issue of fact whether Lighthouse was the direct cause of Zota's injury. (Transcript, DE 236, p. 72.) Defendants

27

argue that the Underlying Action will determine whether the named insured or an employee of the named insured was the direct cause of Zota's injury. (Id. at p. 75.)

The duty to defend is based entirely "on the facts and legal theories alleged in the pleadings and claims against the insured." James River Ins. Co. v. Ground Down Engineering, Inc., 540 F.3d 1270, 1275 (11th Cir. 2008) (internal quotation and citation omitted). The duty to defend does not hinge on the true facts of the cause of action against the insured, the insured's version of the facts, or the insured's defenses. State Farm Fire and Casualty Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004). The Court must look to the most recent amended pleading and "[i]f the allegations in the complaint state facts that bring the injury within the policy's coverage, the insurer must defend regardless of the merits of the lawsuit." Id.   Any doubt about the duty to defend must be resolved in favor of the insured. Id.   If the Court determines that there is no duty to defend, then there is no duty to indemnify as the duty to defend is much broader than the duty to indemnify. Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Association, Inc., Case No. 08-10060-CIV, 2009 WL 230003, *3 (S.D. Fla. January 22, 2009). To make a determination regarding the exception to the exclusion, the Court must look to the Fifth Amended Complaint in the Underlying Action [DE 235].

The Policy provides that "'executive officers'[6] and directors are Insureds, but only with respect to their duties as your officer or directors." (Policy, DE 74, p. 48.) It is undisputed that Jack Farji is the Vice President of Lighthouse. (Joint Statement of

---

[6] Executive officer is denied in the Policy as "a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document." (Policy, DE 74, p. 51.)

Undisputed & Disputed Facts, DE 192, p. 1.) Therefore, Jack Farji is an Insured under the Policy, but only to the extent that he was acting as the VP of Lighthouse. Jack Farji was present at the time of Zota's fall. (Transcript, DE 236, p. 69.) The first requirement of the exclusion is fulfilled, to the extent that Jack Farji was on the property as the VP of Lighthouse, a Named Insured was on site at the time of the injury. (Policy, DE 74, p. 34.) The question remains whether the "Named Insured's actions or inactions are the direct cause of the injury or damage." (Id.) The Fifth Amended Complaint alleges a premises liability cause of action against Lighthouse and avers that as a direct and proximate result of Lighthouses' negligence, Zota was injured. (Fifth Amended Complaint, DE 235-2, p. 3.) Yet the allegations regarding Jack Farji deal exclusively with his work as a contractor working for Broward Executive, not as an executive officer of Lighthouse. (Id. at 6-8.) Consequently, the Court finds that there is no evidence that Jack Farji's actions or inactions as the VP of Lighthouse were the direct cause of Zota's injury. See e.g. Zota I, 466 F.3d at 986. Therefore, there would be no coverage, no duty to defend or indemnify if Lighthouse was a contractor, builder or developer.

### C. The Employee Exclusion

Attorney McIntosh, representing the Plaintiff, stated that, "for the purposes of this motion, I have no trouble conceding that she [Mercedes Zota] was not an employee within the meaning of our policy." (Transcript, DE 236, p. 85.) As a result, there is no dispute and the Court need not address this issue.

### III. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1.  Plaintiff's Second Renewed Motion for Summary Final Judgment [DE 187] is **GRANTED IN PART**. The Court finds that the terms "builder" and "contractor" as used in the exclusionary endorsement are not ambiguous, however there are disputed issues of fact as to whether Lighthouse was a "builder" or "contractor."

2.  Defendants Lighthouse Intracoastal, Inc., Jack Farji and Broward Executive Builders, Inc.' Amended and Renewed Motion for Summary Judgment [DE 188] is **GRANTED IN PART**. The Court finds that: (1) Florida Statute § 627.410 applies to surplus lines insurers and Essex was required to abide by the statute's filing requirements; (2) the term "developer" as that term is used in the exclusionary endorsement is ambiguous and Lighthouse is therefore found not to be a "developer"; and (3) pursuant to the terms of the Policy, Zota was not an employee of Lighthouse.

3.  The Court will conduct a trial to determine whether Lighthouse was a "builder" or "contractor" as those terms are used in the exclusionary endorsement.

4.  Calendar Call is set for May 21, 2009 at 9:00 a.m. with Trial to commence during the two week trial period starting May 25, 2009.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida on this 8ᵗʰ day of April, 2009.

JAMES I. COHN
UNITED STATES DISTRICT JUDGE

Copies furnished to All counsel of record on CM/ECF.